The next case on today's docket is the case of Dwayne Hassebrock and Evelyn Hassebrock v. Deep Rock Energy Corporation. And there's a companion case that you're going to argue separately, so I'll announce that at a later point. And we have Joe Bartholomew and the appellant and George Lackey. Lackey. Lackey is the athlete. Mr. Bartholomew, you may proceed. Good morning, Your Honors. Good morning. Good morning, Counsel. May it please the Court. My name is Joe Bartholomew. I represent Dwayne Hassebrock with co-counsel Stephanie Brower. We're here today to urge this Court to reverse the order of the circuit court in summary judgment for the defendant, Deep Rock Energy Corporation, and against the plaintiff, Dwayne Hassebrock. Your Honor mentioned that there's related cases. I certainly don't have any objections to arguing it all at one time if it's more convenient for the parties. They're the same facts. They're intertwined. And I don't think I'd need to take more than 20 minutes to do both of them. If that is in – if you're in agreement with it, Mr. Lackey. Well, we've spent months trying to untangle these two separate and distinct claims and causes of action by Mr. Hassebrock against different and distinct parties. I intend to argue them separately. I suppose, Mr. Bartholomew, you can argue them halfway if the Court wants to. Well, I'm going to honor your request then, so I guess you can do as you wish. So we'll try to – Maybe do them separate, but don't feel like you have to take up the full time if you don't need it. There you go. I don't know. That's a hint. That's a hint. More difficult or less difficult? That's fine by me. Would the Court like a little brief background on the various facts that are a little bit confusing? Dwayne Hassebrock, Deep Rock Energy, and Sayhawk Corporation. Dwayne Hassebrock, Deep Rock Energy, and Sayhawk Corporation from Oklahoma. Deep Rock is an Illinois corporation that came to an agreement in about 1999 to basically pool their resources, their leases, et cetera, in order to explore oil in Marion County, Illinois. Mr. Hassebrock paid money to do some of the actual survey work, et cetera. All three of the entities in the joint venture had some leases. That agreement was codified in a writing in October 1999 that was attached to the lawsuit, the complaint for Mr. Hassebrock against Sayhawk. That joint venture resulted, unbeknownst to Mr. Hassebrock, in a discovery of what they refer to as a dinosaur amount of oil towards the floor of a state park in the county. Mr. Hassebrock, when he found out about it, filed this pendant against a lot of the leases. As a result of that, Deep Rock Energy Corporation sued him in Marion County in order to quiet the title or to expunge those liens on the leases. That lawsuit went around for I don't know how many times. The complaint, the counterclaim by Mr. Hassebrock, he brought a counterclaim in that lawsuit basically alleging that he was defrauded from this fine by Deep Rock, that there was a breach of declaratory judgment action, and that lawsuit went around and around and around in Marion County for a period of time. Finally, when the court denied, I think it was the fifth or sixth motion to dismiss the counterclaim filed by Mr. Hassebrock, the parties agreed to a settlement where Mr. Hassebrock got $2.5 million and he got a 1% working interest in the oil and gas leases. There was a settlement agreement that was drafted, a lease that was drafted, both of those drafted by Mr. Lackey, who represented Deep Rock Energy Corporation in the underlying lawsuit. The claim that Mr. Hassebrock brings today is a claim against Deep Rock for a violation or a breach of the settlement agreement and a lease in the underlying action. Mr. Hassebrock signed a portion of that contractual claim to his wife. So both of those, his wife Evelyn is also a party to the lawsuit. In addition, Mr. Hassebrock brought a claim then against Sahal Corporation alleging a breach of the contract that was entered into in 1999, alleging again that he was defrauded by Sahal of this massive find of oil in the Forbes Park area and that's the companion case that we have before you later this morning. Why we're here, it's a little bit confusing as it relates to Hassebrock. I originally brought the claims, joined together. I was claiming against Deep Rock alleging a violation of a settlement agreement, but they weren't paying all the oil and gas under those leases. And I brought a claim on behalf of Mr. Hassebrock against Sahal Corporation for the violation of a 1999 written agreement and for breach of fiduciary duty, declaratory judgment, etc. Again, in Marion County, we went round and round on pleadings. We spent a good deal of time because of the joinder, Mr. Lackey, and his clients who he represented, both clients. So, originally he's representing Deep Rock on the underlying claim. He drafts the settlement agreements for the underlying claim. Does not include in those settlement agreements Sahal's name at all. Doesn't include any language whatsoever as it relates to Sahal. He then, in the lawsuit that I filed, represents both Sahal and Deep Rock. And then claims, as we pointed out in our brief, over and over again. These are separate and distinct claims that Sahal was not a party to anything that happened with respect to Deep Rock and the underlying litigation. They were not a party specifically to the release and settlement agreement. And that's important later on when we discuss what happened to the case against Sahal. Unfortunately, this personal injury attorney got off the train in Marion County, maybe by mistake, and got into oil and gas law. We went round and round for six amended complaints. And it's like, I felt like I got pistol whipped for two years and then at the end of two years got shot in the head. I mean, literally. First they're complaining, Mr. Lackey and Deep Rock are complaining that we don't have, we haven't labeled our accounts. Then he says we have too much information in the accounts. Then there's another motion a year later saying there's not enough information in the accounts. And we go round and round and round. The judge, I never appeared before the judge before, but apparently he believes that it's appropriate to recuse yourself only after you've made all the substantial rulings of the case. For what reason, I have no idea, but that's what he did in both of these cases. He makes a finding as it relates to summary judgment in the Deep Rock case, which is really interesting. Because even Mr. Lackey agreed that his client was not entitled to summary judgment. So it wasn't, we only had one claim at that point after the court bifurcated two actions. Made me file another separate action and so now we have two appeals. He, the judge finds summary judgment in favor of the defendant. It's not a complete summary judgment. And it's not, there's only one defendant in that case and only one claim, a breach of the summary. How we're here at the appellate court, I have no idea to be honest. Because he then puts in the language, if you recall, we outlined this in the brief, that there was an ex parte communication or a letter by Mr. Lackey. After the hearing, the judge says in the order, well, I was going to draft up the exact same order. So I signed the order Mr. Lackey gave to us two days later. And then puts in that order the language that this can go up on 304. But there was only one claim and there was only one defendant. It wasn't disposing of the one defendant and it certainly wasn't disposing of the one claim. And he never made a certification of a question that he thought the appellate court should answer. So, you know, we're kind of at a loss. I didn't have much of a choice. I had to appeal it. He said it was an appealable order so I appealed it. But I don't even know if truly that is an appealable order before this court. He makes a finding as it relates to early in the litigation he decides without any motion, the judge decides that he's going to strike gas from the complaint. We have a contract that we have in front of us that we filed with the court when the complaint is filed saying that we believe that there is a breach of the settlement agreement. The settlement agreement was supposed to give Mr. Hasselbrock oil and gas leases, a 1% interest in the oil and gas leases. The judge decides on his own to strike the gas reference. There's no evidence before the court that that should have been done. There's no law to support why the gas should be stricken. And so we have gas stricken out of the case and then he makes a decision on the summary judgment that because Mr. Hasselbrock has been paid by an entity called BiPetro for the oil, that therefore the defendant is no longer liable for any problem with respect to the underlying settlement agreement. That automatically means that there wasn't a breach on the part of the defendant of the settlement agreement. Who is BiPetro? BiPetro is a purchaser of the oil from Deep Rock. Were they the operator, too? The operator, I believe, was Deep Rock. Sahal was supposed to be the operator. Pursuant to the written agreement that was entered into in October 1999, Sahal was supposed to be the operator. They were supposed to, once drilling started, Sahal was supposed to then execute with all the other two parties an operating agreement pursuant to the model operating agreement. So BiPetro is a purchaser of the oil and they've been paying Mr. Hasselbrock. There's no question about that. But there's certainly a question as to whether or not they're the only purchaser. That is clearly obvious. The witness that they deposed said she didn't know, Mrs. Cassidy. And is that, and I was, the genuine issue of material fact, if there's another purchaser of oil out there, is it your position that that is raised only by the testimony of the BiPetro employee? It's raised by the BiPetro employee and also, you know, this is summary judgment, so they have the obligation to satisfy all questions of fact. And remember, our argument, it made this over and over again, that somehow the agreement that they entered into with Mr. Hasselbrock, once they gave him the lease, they don't have to do anything. And that's just not true. They cite a statute that doesn't say that. In fact, the statute that they cited also refers to oil and gas. So the, they're not exonerated from their exposure. There was no, their responsibilities, there was no sign to BiPetro of an obligation that Deep Rock had to the plaintiff. And that's what they would have needed to do, notify the plaintiff of that. That didn't happen. Well, they're saying that because BiPetro is buying the oil, we don't know if they're the only ones buying the oil, and we don't know if they're buying all the oil. And we don't know if there's any gas that's being cultivated from this whole project on top of all that. And so, you know, there's a lot of questions of fact as it relates to the motion for summary judgment. I don't think there's any question that we raise facts that should have defeated the motion for summary judgment. But again, the judge admittedly found that Deep Rock, there was a question of fact as to whether or not Deep Rock was paying for all the oil anyways. And so, Mr. Lackadance. And how was that raised? Well, it was raised in an affidavit by Mr. Wester from Deep Rock. And he indicated that there was this oil sludge or surplus that remains in the tanks that is being sold as well. That my client's entitled to 1% interest in that and doesn't get paid for that. And so, when you look at Judge McKinney's order, he carves that out and he says, he tries to separate a claim here. We never get two claims. He tries to carve out a claim and say that, well, the claim as it relates to that is there's still a question of fact as it relates to that. But there's not a question of fact as it relates to the oil. And he never addressed the gas because he had stricken gas, you know, five complaints earlier. And that's how we got to the place we are today. And I don't know if he can do that under the law. I don't think he can decide that I'm going to bifurcate these things in an order or there's parts of the summary judgment that should be granted and other parts of the summary judgment that should be granted. And then say I'm going to let the part that was granted go to the appellate court. I think there's a different mechanism to do that. And I don't know if 304A is the particular mechanism. But 304A talks about is there a party to the lawsuit that's been dismissed or has there been a claim dismissed? One party, one claim. Esselbrock still has a claim against Ebrock that's pending in the circuit court in Salem. So I don't necessarily, I don't, again, I don't know what I do. I don't know how I address that because I'm between Ebrock and a hard place. The judge has given me the language. Nobody asked the judge to put that language in the order. He put the language in the order. Maybe he thought, maybe he was conflicted. I don't know. He recused himself afterwards. Maybe he thought it was a difficult question to answer. It's very troubling, as you can imagine. My whole time in Salem on this case has been kind of confusing. The only thing I learned is it takes about two and a half years to shoot a coon. And they live in trees. And they live in trees. And I'm a city boy from Belleville where in my home we had raccoons as we feeded, my kids would feed cookies to them on my deck. But it's, you know, to address it even further as we get to the Sahal claim, you know, the Sahal claim, we have a similar situation where the court recuses himself. He makes the rulings and then recuses himself. Again, why he does that I have no idea. He makes a ruling that we don't even know the basis of his ruling in the case of the Sahal because there were two motions to dismiss the file. The first motion to dismiss raised a release. We're talking about a release that Mr. Lackley drafted. Mr. Lackley stated over and over again, as we pointed out before, that Sahal was not a party to the settlement agreement. Sahal has nothing to do with what happened to Deep Rock in 2004. Yet he's claiming now that somehow in this release in settlement agreement that Mr. Hasselbrock released Sahal. Sahal's clearly not mentioned in the settlement agreement. Nowhere in the settlement agreement is Sahal mentioned. Sahal is not included in any of the language of the settlement agreement as to, you know, directors, employees, et cetera. It is not a typical general release that we would see in the cases that I deal with on a regular basis that would say, Joe Bartholomew releases all claims for everybody for the car accident that happened on July 22nd. This is a specific release. Only Deep Rock. You can look at it. There is no ambiguity in that release as it relates to Deep Rock and as it relates to Mr. Hasselbrock. Clearly not included. Clearly not the intention of Mr. Lackley or the parties to include Sahal. At this stage it was decided on a motion to dismiss, which means that everything in the complaint is taken at face value. And there was no evidence to suggest that Mr. Hasselbrock thought that he was discharging Sahal when he signed that release in 2004 as it relates to Deep Rock. And remember, a release is a contract. The settlement agreement is a contract.  It wasn't the intention of the parties for Mr. Hasselbrock to release Sahal. Obviously not. Were there any communications with Sahal during the negotiations for the $2.5 million? None from my client's standpoint. Whether there was some negotiations on behalf of Deep Rock with Sahal, I don't know. But it would have been very easy. But they were never mentioned. Nobody ever mentioned Sahal. In that lawsuit, if they mentioned him in the release, if they wanted to include him, they could have. And, again, look at the person who drafted it. Look at his comments that he made over and over again while we were talking about the motion, the joint or the parties. You know, he asked the court to remove all references in the settlement of the settlement for the prior litigation. He says, why a stranger to the litigation should be made a party to a release escapes me as well. He's talking about Sahal. If there's a suit between two parties, there's not much reason that the two of them care about a release of some third party who's not a party to the litigation. Over and over again, they go through, and we pointed them out in our brief all the time, that if nothing else, this demonstrates how he's judicially stopped from making this work. But, more importantly, it also proves that, obviously, they didn't intend for this to happen. I mean, this is two and a half years into the litigation before he's raising that the release signed by Mr. Hasselbrock and Dick Deeprock somehow bars the action that he had against Sahal going back two years ago. Go figure. I have no idea what basis he would have to do that and how he could stand up here and say that, well, I had to straighten the pleadings out for two and a half years, educate Mr. Bartholomew as to the way we do pleadings in Marion County, and then once it became clear that this was a claim against Sahal, that then I know that it was released by the claim against Deeprock. When he's saying it all along, it clearly wasn't. And they're trying to raise this argument, and to be quite honest, I don't understand it. Something to do with common law and co-obligors under an obligation or a contract, that if I settle with you and you both have a joint obligation, that I can't then, that release would then bar me from bringing a claim against the other obligor to the same obligation. I think that's been done away pretty much as it relates to the federal law. Mr. Bartholomew. I've got some questions. Maybe we'll save those for rebuttal. Well, no, I think it's kind of an open-ended thing here since you were saying that you are going to kind of do it all along. I'll do it all along. I don't want to interrupt you. What's the statute limitation that applies to your client's claim against Sahal? I think it's clearly 10 years. There is a written contract that was entered into in October of 1999. Now, the breach of that contract occurred in 2000, and one of the things you don't know about, it was a little confusing, and it's my fault, is that there was a lawsuit against Sahal that was filed by Mr. Hasselbrock in 2009 in federal court and was voluntarily dismissed and refiled within the one year. That was not done by me, but it's prior counsel. So that's why you're probably wondering, rightfully so, well, wait a second, even under a written contract, aren't you late? And the answer to that is no, that that was filed within, certainly within a 10-year statute of limitations on a written contract and then voluntarily dismissed and refiled. So the federal case was dismissed in 2009 and then refiled within a year in state court? No, dismissed in federal court was filed in 2009. Filed. You know, I hate to just object, but this is not in this record. I don't think counsel can correct the record and that stuff during oral argument. There's not one word about this federal case and that any part of the record in this case was before the trial court or anywhere else. Now, I can help. Well, I mean, the court can inquire about things that maybe are before this record. I understand that. It really is. I mean, how far from the record? You know, when you ask a question, you don't know whether it's in the record or not, so. Well, I'm pointing out that I guess I'm pointing out it's not. Okay. Thank you. Of course, the court, I guess, obviously, can do whatever it wants to, but I just am uncomfortable to say we're going to start taking new evidence that adds you to the record. We don't intend to do that. But thank you for pointing that out. Okay. Let me answer it this way. It's obviously interesting. I mean, you would have caught that. They're not contending that the 10-year statute of limitations was blown in this case. And they can't contend that because the federal lawsuit was filed in 2009. So that answers that question. I think it's clearly the 10-year statute on the written contract. They don't even address in their brief our count five, which is specifically breach of the written contract. But also we will hear the statute of limitations is a continuing one here. Because this is every time they harvest more oil out of this thing, they're violating the agreement that they had with Mr. Passelbrock for his rightfully owed proceeds from that oil. So, you know, for example, if this were a situation, it's kind of similar to the case that was from the Fifth District with the Supreme Court, the Toyota case, where the court said that those are continuing violations of the franchise agreement. It's similar here. Every time. You know, we don't know how much oil is coming out all the time. You know, oil comes and comes and then it goes and then who knows. So every time they're taking oil out of this, it's another violation of that settlement of that agreement in 2000 or 1999 because they had an obligation to pay him his proceeds under that agreement. I have no further questions at this time. Okay. Thank you, Mr. Bartholomew. You'll have the opportunity for further argument. Mr. Lackey? Thank you, Your Honor. May it please the court. Part of what we just went through with the confusion between the claims of Mr. Passelbrock gets say-called on one hand and Deep Rock Energy on the other. We did spend a considerable amount of time in the trial court getting those things untangled. What's the tangle, Monk? It seems very strange. Well, first of all, we filed together one lawsuit. I'm sorry. I'm sorry. Two defendants filed in one lawsuit? Yeah. Mr. Passelbrock filed a lawsuit in which he had some claims against say-call and then the same lawsuit claims against Deep Rock. And that's done all the time, isn't it? It can be that. It is done a lot and frequently it's done correctly. Our position all the way through is that a suit against Deep Rock on account of failure to comply with a 2004 settlement agreement is totally unrelated to a claim that say-call back in 2000 violated some fiduciary duties to Mr. Passelbrock in connection with a joint venture. There is no commonality of evidence in those claims. And we had argued strenuously at the trial court that these were two separate claims and should be separated. The trial court agreed and a new lawsuit against Deep Rock was filed and we wind up now with two lawsuits. One against Deep Rock alleging breach of the settlement agreement. And then the other is a claim against say-call for breach of various fiduciary relationships with Mr. Passelbrock. I would like to first address the claims against Deep Rock Energy because they're perhaps the easiest to get a hold of. The claim against Deep Rock and it can be summarized right directly from the words of the Fifth Amendment complaint. The claim is that the settlement agreement was breached by Deep Rock based upon this statement. Upon information and belief, Deep Rock has failed to pay the full amounts due and owing to Duane Hasselbrock and Evelyn Hasselbrock for the 1% carriage interest in the oil which has been harvested under the oil and gas leases which were granted as part of the settlement agreement. In the settlement agreement between Duane Hasselbrock and Deep Rock, Deep Rock paid $2.5 million and also gave to Hasselbrock a 1% carried working interest. That carried working interest is described in the settlement agreement as an assignment of a carried working interest in the form attached as Exhibit 4. The form of the assignment was fixed in the agreement. That assignment was given. That assignment specifically says this in part. The carried working interest herein assigned shall entitle the assignee to receive 1% of the working interest oil produced and saved from said oil and gas leases free and clear of all costs and expenses, etc. It clearly was limited to oil only and not to gas. The claim in the Fifth Amendment complaint is for oil only. What does the Sixth Amendment say? That's the one against Seiko. The Fifth was the last one against Deep Rock. The assignment that Hasselbrock got was for a 1% carried working interest in oil, not gas. It says so on the face of the document. And so that's why gas was stricken out by the trial judge. And, in fact, in the Fifth Amendment complaint, there is no claim for gas made. It's been abandoned. As we point out in our brief, when you revile a complaint after a motion and it's complete within itself, then you've abandoned any claims that were involved in previous pleadings. They're out of the case. And that was done here. Counsel, one question I wanted to ask you. The plaintiff, on their claim that they weren't getting the 1% of the oil runs under the carried working interest, indicated that the defendant, Deep Rock, may have been dilatory on responding to discovery. If they could have done some more discovery, if the court had not… Of course, that's not true. It's not going out in the record. And was there any discovery pending that you had not responded to that may have assisted them in finding a material issue of fact? No. There was not. Okay. There was some discovery requested about the amount of gas produced, but that was moved because gas was stricken out of the case. There were no notices of deposition ever provided. By the plaintiff, requesting any depositions of anybody. There were no outstanding interrogatories with respect to this issue in the Deep Rock case that were not answered. Very little discovery was done at all. And, Counsel, you say gas was stricken out of the case. Yes. I think it was stricken by the court on a 2-6-15 motion. Correct. The second or third complaint. That's correct. But then the court again addressed the gas in the partial motion. It did. Let me finish, Counsel. The partial motion for summary judgment. So, procedurally, do we have jurisdiction to look at that gas issue? Are we reviewing the motion to strike or reviewing the partial motion for summary judgment? You're reviewing the motion for a partial summary judgment, and I would suppose that since the court did refer to gas in that judgment, this court probably has the right to look at that. I don't like that result, but I think that is the result. I would like to say it's dead, gone, and buried to begin with. But I think that since the court did mention it in that order, this court can do something with it if they want to. I don't think, to me, it's not an important issue because as soon as you look at that assignment, it says interest in oil. It does not say gas. And that's the end of it. There's nothing in the settlement agreement itself about that issue other than to give this assignment. And the form of the assignment says oil. It does not say gas. And as the court, at least, Judge, you know that you can divide an oil and gas lease up a hundred different ways. You can divide them up horizontally. You can divide them up by depth. You can divide them up by formation. You can divide them up, divide the oil out of the gas. Numerous ways of doing it, and so you have to look at the exact wording of the assignment to see what was assigned. We further say, which is getting away from the gas issue, that there's nothing in either the agreement or the assignment that obligates Deep Rock to be the person making the payments. And Deep Rock was the operator. There's no question about that. I'm not sure the record's real clear, but that's true. Bipetro was the buyer. Under Illinois law, under the Oil and Gas Rights Act, Section 10, in Illinois, the first buyer of oil is the party required to make distribution of the proceeds of the sale. Unless there's a written agreement with the, in this case, the operator, to do it some other way. Or if the operator or some other person agrees to be responsible for doing that. In this case, there was no such agreement. Bipetro was the first buyer, and there's no agreement that Deep Rock or anybody else would make those payments. Deep Rock did make the payments. We have the deposition of Ellen Cassidy from Deep Rock, or from Bipetro, that went into great detail. And there are documents attached showing every month the amount of oil. It shows the dates of the oil purchase. It shows the amount sold. It shows the amount paid for it. Every month from the date of that settlement agreement onward. The deposition of Ellen Cassidy is, and this is a question. And to the best of your knowledge and belief, has Mr. Hasselbrock been paid in full for his entire share of all the proceeds of oil from the oil and gas leases operated by Deep Rock Energy Corporation, which Dwayne Hasselbrock owned and entered? Answer, to the best of my knowledge, he has been. Now, and there was another question put to her that, do you know if there's any other purchaser? That's right. I do happen to have that in front of me, too. And I think she responded, I don't know if there's another purchaser or not. Let's get it. Does that create a genuine issue? It does not. And why not? Here's why, because the rest of the answer solves the problem. First of all, here's the question specifically. Do you know if Bipetro purchases all of the unrefined crude oil that is produced by Deep Rock? Not produced by Deep Rock from these leases in which Hasselbrock claims an interest. That is not in this question. The question is, do you know if Bipetro purchases all of the unrefined crude that is produced by Deep Rock? Answer, I don't know. Question, who would be the person that you would believe would have that information? Answer, in our company, I don't know. I mean, they're free to sell their oil to whoever they choose. They could have wells that they're selling to other companies. You know we wouldn't know that. A company, Freemont, has wells scattered in different places, and they are not required to sell all the oil from all their wells to the same buyer. So you're saying, counsel, that that response refers to leases other than the ones in question? She wasn't asked the question, did they buy all the oil from these leases? The question was, do you know if Bipetro purchased all of the unrefined crude oil that is produced by Deep Rock? And there's no possible way she'd know that answer. We have clients that have oil wells in Illinois, Indiana, Kentucky, North Dakota. They don't sell to the same people. No oil buyer could possibly, except by some stroke of strange luck, know. What oil wells a particular operator operated, or whether he sold it to all of that company or not. There's no way she'd know that. Further, the uncontradicted affidavit of Ben Webster, specifically his, states, at all times during and subsequent to December 3rd, 2004, that's the day of the settlement agreement, all of the oil produced from the leases described in the settlement agreement and in the assignment of the 1% carried working interest to Duane Hassebrock was purchased by Bipetro. Wouldn't you say that this assignment is a liability of Deep Rock? It isn't. He made the assignment. The assignment to Deep Rock in making the assignment simply burdens the other work, the working interest that Deep Rock then owned with this carried interest. Okay, would you answer my question? Suppose that I saw a farm. Well, please, don't interrupt the court. Yes, I'm sorry. Do you believe that the assignment created a liability to Deep Rock? It created a burden on Deep Rock's interest in the leases. So when Deep Rock sells the liability, doesn't the liability pass to the purchaser? If Deep Rock would sell its interest in the leases, then the purchaser would assume the obligation of paying the working expenses attributable to that 1% interest. And then the question of who is supposed to physically pay the money would be determined by the Illinois Oil and Gas Rights Act. That is, the first purchaser of the oil would be obligated to make the payments. And in this case, it was Bipetro? Yeah, it was Bipetro. Now, you've referred to this assignment. You read us one line of the assignment. That's correct. All the exhibits talk about the oil and gas leases and how Mr. Hessebrock is giving up his interest in those. And they use the word gas. In the assignment, in the line just above the line you read us, it says that he is going to sell, sign, transfer, and set over Dwayne Hessebrock, et cetera, a 1% carried working interest more particularly described below in and to the oil and gas leases. So he uses the word gas there and then to attach exhibit A. So that line gives him an interest in the oil and gas. And then the very next line says oil. Well, in the oil business, an oil and gas lease is referred to as an oil and gas lease. I understand that. And the lease from the middle owner would have covered, in this case, both oil and gas. Typically, an oil and gas lease does do that, but they don't always. But in terminology, an oil and gas lease is called an oil and gas lease. And an assignment of an interest in the oil and gas lease may or may not cover oil or it may or may not cover gas. It's still a partial assignment of the lease. And it's still an assignment of interest in the oil and gas lease. Well, it seems to me there's an ambiguity in this assignment. Because one line says that he's getting oil and gas, 1% with a carried working interest in oil and gas. And then the next line says he's getting oil from the oil and gas leases. So now you have an ambiguity. And if there's an ambiguity, how do you have summary judgment? When you're under the term oil and gas lease, you might say it's a term of art. Exactly. And you cannot tell from a reference to a 1% carried interest in an oil and gas lease. And this says, more particularly described below. In and to the oil and gas lease. In and to the oil and gas leases attached here to his exhibit A. And then right below that is the description of the interest that is being assigned. But it says the working interest oil produced and saved from the oil and gas leases. That's right. And it is oil produced from those leases. But the line above says oil and gas. So I'm just asking whether anyone brought up that issue in an argument before the court. I think the oral arguments are so lengthy at different times it had to have been. It had to have been. Now I'm getting afield here. The issue, one issue raised was the form of this order. And what the court found was that except for two items referred to in the Webster affidavit, which was totally uncontradicted, and that is there were two items of oil receipts which were not bought by Bipetro. Which Bipetro didn't distribute for. One was referred to in paragraph 11 of his affidavit, which was an issue which was accepted by the court from its judgment and remains for trial. And that is described in paragraph 11 of that affidavit and also referred to in the order. And that had to do with a title problem. And what happened there was that there was a title problem, a small fractional interest in the minerals that there was a title problem about with conflicting leases. That was noted by Bipetro and the money was escrowed. And then a settlement got reached between Deep Rock and the other claimant. And there's a special agreement, a division order signed in the file produced by Bipetro wherein Deep Rock agreed to handle that. And it was that amount of money was divided between Deep Rock and Deep Rock's investors and the other claimant to settle that. And that issue was left open because the court felt that there was some question of fact as to the proper distribution of that particular sum of money. The other issue had to do with something that was referred to in paragraph 13 of the Webster affidavit. And that had to do with the situation that when oil is produced in tanks, it over time creates a sludge-like material at the bottom called tank bottoms. And that has to be disposed of from time to time. In this particular case, Deep Rock engaged the company to come and haul away, or either they hauled it away or Deep Rock hauled it away. Mr. Laffey, I think you're up. I've got one remaining question that I ask. Let me just, the appellant has raised this issue of the fact that the trial judge recused himself and the timing of that recusal. That it more or less places a cloud over these orders that the trial court has entered. Should we be concerned about that? I don't know how I'd have this done. I've got no earthly idea. I have some suspicions, but I don't, would hate to just say that I know that he... I'm not asking you to speculate. Well, I know that he was not the ordinary judge in this case because the ordinary motion judge was recused at the request of the plaintiff. In the case then, Judge Steadman would normally have been the motion judge, say. And as his right to do it, Mr. Hasselbrock, as attorney, recused Judge Steadman for his own reasons. He didn't even have a reason. He doesn't have to have a reason. I don't have any comment about his reason for it. He did have a right to dump one judge, he did. Then the case got assigned to Judge McCain. How it got assigned to him, I have no idea. But it was outside his normal assignment of stuff. He may have just gotten sick of it, hopefully. Or maybe he was overburdened with other things. I have no idea. He had ended these two cases, basically, at that point, except for the two small items in the Deep Rock case. He may have thought, I'm just going to be rid of this. I've got other things to do. We'll let somebody else finish it up after the appeal, if there is an appeal. I don't know. I don't think it's got any significance whatsoever in the merits of the case. Thank you. I have no other questions, thank you. Thank you, Mr. Lackey. You'll have the opportunity to address the safe- The sign-off part, later? Later. All right, that's fine. We'll have a rebuttal, and- Two seconds. Two seconds, and then you can go into any argument you have related to Seha. If you have additional- Well, I think we addressed Seha, but I could reiterate that, or just maybe use a little bit more time in the rebuttal, and it probably would make more sense, I think. And I think we'd be willing to do that, but I guess we need some kind of timekeeping. In terms of the rebuttal as it relates to Deep Rock, the only points I want to raise is that we never abandoned the gas lease issue. That was stricken by the court, and to suggest that we have to continue to have that in the complaint and have it continually stricken, I think it's not the law in Illinois. We never chose to abandon the claim. In fact, you mentioned that the lease, the gas lease, was, in fact, an issue that the judge addressed in the second judgment motion, so it's before you whether you like it or not if you believe that this is the proper order. Again, this whole recusal thing is quite troubling. We have an ex parte letter from Mr. Lackey. We have the judge all of a sudden entering an order that he said he was right in many ways, and then we have him recusing himself because he doesn't want to do it. I mean, I don't know the basis under Illinois law for a judge to hear a case for as long as he did and decide that I'm going to recuse myself. He seems to want to just throw the Deep Rock case up to the appellate court because he doesn't want to deal with it. Maybe, but then he recuses himself. I don't know. But we never have been in there. And if I ask the court again to look at the statute that he keeps citing because that statute references oil and gas leases, and it does not say what he says it says, that I Petro, because of the first purchaser somehow, is the only one obligated to pay. The agreement was between Hasselbrock and Deep Rock. Deep Rock is violating that agreement. Or if I Petro wasn't paid, for example, then my client could go against Deep Rock, and Deep Rock could go against my Petro. It happens all the time. Counsel, let me follow up and ask you a question. On the part of your claim is your client's not getting his 1%. And, of course, they're saying that he is. And the court said there's no issue of fact that he's getting his 1%. And in response, Mr. Lackey said that the testimony of Cassidy, the employee of the buyer of the oil, said we don't know if he sells all his oil to buy Petro. And do you agree with his analysis on that? I assume you do not. Because as I understood it, you're saying her testimony creates the genuine issue of fact on the is he getting his 1% or not. Correct. At best, there's an ambiguity in her testimony, and that ambiguity has to be resolved in favor of the plaintiff on the motion for summary judgment. So he's saying that that wasn't a question that was asked. He could have clarified that later on in the deposition. He presented that as his evidence that there are no questions of fact. And there obviously are questions of fact. And Judge McKinney's order was somewhat close to what you just reiterated, but specifically he found that there was no question of fact as it relates to what Buy Petro was doing, but there was a question of fact as to whether or not Mr. Hasselbrock was being paid the 1% interest in all the oil produced from those wells. Because obviously there was oil, even in Webster's affidavit, that was never accounted for with respect to the plaintiff. And that's the thing he tries to carve out of this by saying this is a separate claim, and it never was a separate claim. So that's the part of the summary judgment that in the original order he says that part of the case still remains. The other part of the case doesn't. And I don't know how he gets to do that. I don't know how you split those types of things unless you ask the court for a certified question or if it was a difficult question for him to decide. According to the statute, the Supreme Court rule, did it resolve the claim against the defendant? No. Did it resolve a claim? More than one defendant, there was only one defendant. Did it resolve a claim? It did not resolve a claim. That claim is still pending. He just dismissed part of the claim. I don't know if that's a three or four type A appeal. I don't know. I really don't know the answer to that. Let me follow up and ask you another question on a different point. In your brief you made the point that there may have been a discovery outstanding that you had propounded to the defendant, Deep Rock, that could have assisted you in defeating the motion for summary judgment as to, as I understood it, the one percent of the oil runs issue as opposed to whether gas is covered or not. And I noticed you taking some notes when I asked Mr. Lackey that question. Do you agree with his response to that? I don't. There were a number of interrogatories propounded. They were objected to, every one of them. Now, they're not a part of the record of the case. And I did look to see there were no motions for sanctions filed on discovery. That's true. What had happened was, I mean, we were, as you can see from the record, we were spending a lot of our time on the plea. That's all we were doing. We propounded the interrogatories. We objected to all of them. You know, at that point we just decided let's figure out what's going on here. I mean, basic stuff we objected to. You know, who are the shareholders? Tell us about these oil and gas leases, et cetera. Okay. Mr. Bartholomew, you still will have the full balance of your time. I urge you not to take it all. But at this point, we will now turn to Mr. Lackey's opportunity to address the claim against CEHA.